Silvertop Associates versus Kangaroo Manufacturing, number 18-2266. I feel disappointed. I thought counsel might wear the bananas. We brought them for you. Okay, all right. We'll wear the bananas then. Judge, there was a motion to hand out the costumes today so that they would be part of the record. Didn't we grant the motion to use them? I brought the costumes. I just didn't know the procedure. Well, you can take them out if you like. If it's part of your – it's always a two-edged sword with exhibits because it does take away from your time, but it's up to you. You can use your – So that the court can see what they want. That would be fine. Thank you. I'll pull one out. They all kind of look very similar. But we're not going to try them on, just so you know. I don't know which one this is, but they're – this is Rasta Impostors. Okay. They all kind of look very similar. We're on the record, right? No. Okay. We can go on the record now, I think. Is that the one that has the copyright? Yes. Okay. Just let the record reflect that counsel is, for the appellant, has taken out two banana costumes. Taking out the second one. And if you look at them side by side there, the depth of the costume might be a little different, and the top might be a little different. The color is slightly different, but they're basically pretty similar. Right. We can see that. Okay. And the second one is what? That one is Kangaroo's costume. There's two from each company. Right. One's like a deluxe version, but they're more like – Well, you might as well come up to the podium. Thank you. But they're very, very, very similar. It seems that we've already started argument, but I had a question since you took them out, and I wondered – and perhaps you've already answered it by just showing it to us,  That is not part of the costume? That is not part of the costume. The costume is just the yellow overlay over your clothes. You may proceed. Thank you, Judge. I want to reserve two minutes for about – That will be granted. I'm not sure I'll need it, but – So we look at this as a very straightforward case. There was a copyright certificate that was issued for the costume, but that's not dispositive in reviewing the validity of a copyright. Why do we have jurisdiction to hear this case? Well, there was a preliminary injunction that was granted. I didn't see an injunction. I don't see any order enjoining you from doing anything. Where is it? What order of the district court tells you that you cannot sell your costume or do anything else? Your Honor, there was a preliminary injunction hearing, and the court issued a preliminary injunction. And what does the order say? What does it prohibit you from doing? It prohibits us from selling or distributing the banana costume. Quote it for me. Where in the record is it, and what does it say? To be honest, I didn't have the page for that because I wasn't really expecting this question. Well, we need to assure ourselves that we have jurisdiction. It's an interlocutory appeal. Yes, it is, Your Honor. And 1292 talks about it. So A3 is the order. What is it enjoining your client from doing? It says order the plaintiff's motion for preliminary injunction is hereby granted. It's not an injunction. Well, it's not. Every injunction I've ever seen, I've had a lot entered in favor of my clients and against my clients. And they say you're not allowed to sell the software, you're not allowed to do this, you're not allowed to do that. As far as I can tell, you're not laboring under any disability. Your Honor, I am pretty sure that if my client were to go ahead and sell the costume, they'd be hit by a contempt motion. There was an injunction bond that was posted. And maybe it's not artfully drafted by the court, but we believe that it affects us and it prohibits us from selling the costume, which is the subject matter of the injunctive application. So it's enough that everybody's laboring under the misimpression that there's an injunction that prevents you from selling the costume? If this court were to rule that there were no preliminary injunction and that this appeal is moot, we'd be happy, but we would have to go back and essentially litigate the same issue over again because I'm sure they would immediately apply for the court to issue a more detailed order. Should we just stay this appeal so the district court can enter the injunction that everybody thought it entered? Well, I think, Your Honor. I saw the proposed form of order by the movement had the language you'd typically expect to see in an injunction. But for some reason, the district court didn't enter that order or modify it. Your Honor, I don't disagree with you, but we are here today, and I think that the court does have authority to reach the substance. I think that it says that the preliminary injunction is granted. Whether it's artfully drafted, I think that confers jurisdiction on the court to address this appeal. If, as part of this appeal, the court says that the order is not artfully drafted and should be dismissed or vacated, that would be fine, but we think that the court should address the other issues that are on this appeal today. Look, there are two banana costumes from competing companies. One of them has a copyright certificate. That does not prohibit this court from looking at the validity of whether a copyright should have been granted. There's a couple of elements that are required in order to have a valid copyright. One of them is you can't copyright a useful article. And so costumes in general have been considered useful articles and generally not subject to copyright protection for a costume. If there is a design element on the costume, the Supreme Court in the Star Athletica case has made clear that you have to look at the design separate and apart from the underlying base costume. And so there's an element of separability. You look at that separate element, which here is a banana, and then you decide whether that banana design is able to be copyrighted. And that's the separability requirement. The court then has to go to look at whether or not that we just, I mean, it surely applies here, but the court there explained that the respondents had no right to prohibit any person from manufacturing a cheerleading uniform of identical shape, cut, and dimensions to their ones. Aren't you asking us to do just that? Well, actually, no, sorry. We're on the other side. Yes, you are. You are, indeed. Sorry. My fault. Go ahead. Okay. So you look at the banana, and there's an issue as to whether it presents any originality. And our contention is... There's a little bar for that. Well, this does not present originality in any form, and there's a whole series of cases which we've cited to the court, which basically find that designs that are directly imitative of things as they appear in nature are not subject to copyright protection. They've addressed that in the context of... You'd never copyright a painting of an apple. If there's artistic expression that is different from just copying the apple, then it might be subject to copyright protection. If there's an inlay on the apple, if the apple has some weird twisted leaf... Just a painting of an apple. Might not be protectable. Not protectable. Might not be. How about in those journals? Banana. But, Your Honor, in this case, that's not what we're talking about. This record is very clear. The testimony of the CEO from the company said specifically it was designed to look like a banana in nature, it looks like a banana in nature, and there's no artistic twist to the banana. That's clear from the testimony in the record. So we don't have to go to that next step to say, what if some fancy artist painted the banana on the canvas? Is that different? This is not that case. This is the clearest, simplest case of no artistic element to the banana. Well, the district court articulated eight unique features. And if you go back and look at those eight features, and on page, I believe, 26 of our brief... Hold on a second. Sorry. On page 16 of our brief, the court lays out these elements, but most of the elements that the court lays out are utilitarian features of the costume that cannot be subject to the copyright protection that are specifically, as far as Star Athletica is concerned, not part of the elements of deciding whether or not this costume can be copyrighted. The location of the head cutout, the arm cutout, the color... So the cutouts may be utilitarian and not protectable, but that doesn't mean the fabric and the design of what the banana looks like isn't protectable. Well, there would have to be some artistic element separate from just designing it to look like a banana. If you allow somebody to go... There's no case on this in the Third Circuit. So if you go out, and a lot of this law is out of the Ninth Circuit, if you go out and allow somebody to say, here's a photo of a banana or here's a picture of a banana, nobody else can make a banana that looks like a banana. You're basically giving somebody the right to copyright something that's not original, not artistic, and flies in the face of the purpose of the copyright statute. But aren't there other bananas that aren't challenged by Rasta Impostor? All of those bananas have fancy designs. They're not meant to look like an actual banana, and that's the difference. You can go out and create a design element on a banana and say, this is a unique artistic creation. It has squiggly patterns, sunglasses, whatever it is that you've done to make it look different than a banana. But when you make it look like an actual banana, and you intend it to do that, and you don't add artistic elements, that's when it falls outside of the scope of being able to be copyrighted. So does that mean, it sounds like you're arguing a costume of a terribly underripe or terribly overripe banana, it may be copyrightable, but one of a normal off-the-shelf banana is not copyrightable? I think if you were to take a banana and put some brown spots on it, like it rots in nature, I don't think you could copyright that either. But if you put gold stars on it, you made an inlay pattern like my tie, that would be an artistic element. Okay, so the differentiator for you is you need to do something to the thing in nature that tells the viewer that it's not the thing in nature? It has to have an artistic element or an element of originality, not something that's just duplicating. Well, that's why I asked you about the painting of an apple. I'm asking you a hypothetical. Every time someone takes a paintbrush and paints something, isn't there something inherently original about that? I don't know the answer to that, and I'll be quite honest. If the most famous artist in the world painted an apple, and they did it in a certain way with a certain background and a certain element, so that you identified that as an artistic work hanging in the Louvre, that might be subject to copyright protection. But if you take a photograph or you take something and you protect it... All right, so I don't know. That sounds like you're saying that talented artists who get recognized in the Louvre get their works of creation protected, but the graffiti artist or some person laboring in anonymity doesn't get their original works protected. Is that what you're arguing? So I thought about this issue for a while. I mean, you could say this is a fairly trite, comical object we're dealing with here, but that doesn't make it any less worthy of protection, does it? Are you saying that it has to be high art to get copyright protection? No, but if somebody just puts a picture of an actual banana out there, and you say, hey, I did this to look like a banana. There's no artistic bent to it. It's a costume, and costumes off the bat have an inference against them being protectable. I don't think this rises to the level of being an original artistic work. There's always going to be a degree of analysis that has to go into every case to decide whether or not it satisfies that. One of the cases had to do with a turtle pendant, and it looked like a turtle, and somebody put some jewels on the back, and the court said, well, it looks like a turtle, and even the placement of the jewels is obvious. It's not something that would rise to the level of artistic expression. The Star Athletica case is a cheerleading outfit, and the court said that the outfit itself would not be subject to protection, but they put a little inlaid design on it, and that might be protectable. I'm wondering what your suggestion is as to how we review this case. So you disagree with the eight features that the district court found, right? There's two main issues here. Let me just finish my question. Right, you disagree with those eight features. Correct. Okay, so how do we do this? Do we go back and lay pictures out on a conference room table, and do we eyeball the features that the district court identified as unique, and say, to my eye, that doesn't look artistic, even though the district court found it? How do we do this? Okay, my time is up. You can answer. Sure. The way that this decision should be addressed is, first step, the decision is wrong because it relies on utilitarian features in doing the analysis. It doesn't comply with Star Athletica. Second, even if we get past that, objects as they appear in nature, as there's a whole line of cases that talk about it, should not qualify as original works for purposes of copyright. Step three, in this particular case, we don't have to split hairs in doing the analysis, because the testimony makes clear that it was designed to look like a banana, looks like a banana, and doesn't have an artistic bent, and that's testimony from the CEO who was involved in the design process. When you put those three things together, at least certainly for this case, this is not a protectable costume, but in terms of the court expanding on that, I think the court can use that framework of analysis in the same way that the other courts have done, and you can either come out with the conclusion that if it's designed to look like something in nature, it's not protectable, or you can make a more narrow holding, or actually a broader holding that basically just says there's a presumption against originality when you design something to look like something in nature, and you have to do something to get past that threshold to show that it really is original. Okay, thank you, counsel. Thank you. Good morning, Your Honor. Good morning. May it please the Court, my name is Alexis Arena from Flaster-Greenberg. I represent the plaintiff in appellee Rasta and Pasta. I'd like to start by turning to the appendix and the compilation of banana costumes, which Rasta and Pasta acknowledges are not infringing, and those are pictured at 64 to 69 of the appendix. There's 24 different costumes. Opposing counsel stated that all these costumes were distinguishable and non-infringing because they were distinctive design elements and they did not look like a ripe banana. If the court just looks at those different banana costumes, the court can see that's not accurate. These bananas do not all have distinctive design elements, but they are all not substantially similar to our banana design. So if you look at each element of the banana, all the elements, such as the ones the court pulled out in its decision, they're not all the same. So the tips of the banana, what is utilitarian about the tips of the banana, for example? Yes, if you put the costume on, it clothes the body, which is a utilitarian function, but the tips on the banana do not all look alike. They're green, black, brown, narrow, wide. Aren't you talking about a substantial similarity? I don't think that's really an issue here, right? Well, I'm talking about originality because he says there's no creative spark. Under the Supreme Court's decision in Feist, which is still good law, the test for originality is whether there's a creative spark, no matter how crude, humble, or obvious it may be. And Your Honor was correct in saying it's a very low bar. Feist very clearly sets that out. So when you're designing the tips of the banana, is it original or not? Is that design original? When you choose how many lines to put on the banana, that's a design feature. It's not utilitarian. The lines aren't utilitarian. And a real banana has multiple lines. But Rasta and Pastas had two. And Kangaroos has the exact same two. Theirs is nearly identical to ours. The cut, the shape. That's why they're arguing yours is not copyrighted. Correct. But this Exhibit A, where, you know, we're lawyers, judges, we're not costume designers, we don't naturally think of all the different ways, perhaps, that you can design a banana. You kind of laugh. But this is kind of a difficult thing for us. Now, in every case, we're going to have to look, you know, do a certain analysis. And there could be bigger implications here. I mean, if we decide, if we go with you, then, I mean, couldn't all clothing be considered copyrightable then? Absolutely not, Your Honor. I mean, you've watched the Academy Awards, right? I mean, people have some pretty outlandish things. Yes. Well, so what Kangaroo is asking is for the court to actually undo 18 years of copyright protection. Because this costume was created by my client in 2001. And the Judge Holman was not the first judge to look in depth at this issue. Other judges did as well over that 18-year period. And it's never been invalidated by any court. And the Copyright Office looked at this issue. In the appendix at 73, we have a letter from them. There's two registrations that Rasta and Pasta owns for banana costumes. There's the one at issue in this case, which was issued in 2010. And there's another one it has for a costume that's very similar, only peeled. Right. And in that, the Copyright Office initially refused registration. And then a turning argument was submitted. And they said, you're right. We agree that under Feist, it meets the requirements for physical separability. Is that positive in any way for us? It creates a presumption of validity, which the court may overturn. But in doing so, it would have to disagree with the Copyright Office and obviously with Judge Holman, who looked at this issue. And I believe that would be the road that would create completely new law and would be inconsistent with all of the other decisions in this case. Star Athletica is a very important, obviously, case to consider. In that case, they found the design elements were protectable. However, the cheerleader's uniform shape, which is much more akin to clothing than, for example, the top portion or the bottom portion of the banana costume, was not protectable. But cheerleader uniform is also this iconic universal clothing shape that we see over and over again used in clothing companies across the nation, whereas there is no one universal shape for banana design that's been accepted for decades and decades in American culture. When you look at this exhibit... I'm not sure anyone thought it was clothing until your client came up with the idea. But it's true. I mean, my client's a smaller New Jersey-based family company, and this is their claim to fame. This is their Halloween costume designers, and this is a very famous costume in the industry. It's a big deal to them financially. None of that means it's copyrightable. That's correct, but they've worked very hard to protect it for the last 18 years. It's won awards. And I think the distinctive shape and design has become very recognizable in the industry. So you're not arguing that you're cornering the market on banana costumes. You're saying people can create any number of banana costumes, they just can't duplicate yours. Correct. Is that the essence of this case? Absolutely. We have always conceded there's no monopoly, there's no copyright for an idea. Such as the idea of a banana costume, the turtle pin case opposing counsel cited. In that case, the court said there's no copyright for the idea of a turtle pin. When we introduced this costume in 2001, it was the only lightweight, inexpensive banana costume for consumers. There was a mascot one that the client was aware of that was $150 plus and very heavy on the body. So this became very popular. But even as more lightweight Halloween costumes have been introduced in the market, there's been no lawsuits filed. We have acknowledged that those are not infringing because there was creativity in the design. But in this case, copying, I believe, may be undisputed. And substantial similarity, Kangaroo stated in its brief, is not disputed. So the only issue is whether you can copyright the design. And the reality is when Kangaroo designed its product, it made choices. It made choices about the tips. What are they going to look like? Small, short? They look exactly like Frosted Pastas, banana tips almost. Cutouts aren't protected, are they? The cutout holes from the arms and legs, Judge Hillman found. They seem utilitarian. Judge Hillman found that those were not protectable. But in Starlet, I was asking your adversary, and I should have been asking you, sorry. But the Supreme Court said that there's no right to prohibit any person from manufacturing a cheerleading uniform of identical shape, cut, and dimensions to theirs. Isn't that this case? It's not this case because the identical similarities between these go beyond just the shape. And unlike a cheerleading uniform, which is more traditional clothing in one exact shape, which has been used for decades and decades, there is no one shape of a banana costume that's utilitarian. Well, the shape has to be a banana. Otherwise, it's not a banana costume. But when you look at the different ones in the market, you will see some of them curve to the right. Some of them curve to the left. Some of them curve behind the body. Some of them curve in front. Some of them are higher up. Some of them are longer. There's so many ways to conceive of to create a banana costume, and they've conceived of the way that it's exactly like ours, which is not coincidental. We had the deluxe and the lightweight. They came out with deluxe and lightweight. They had a trade show booth of their product, and they ran out of their deluxe banana, and they just put our exact product with our model, our logo. Who knew banana costumes were so popular? It's big business. Is this a Halloween business? That's most of their sales are around the Halloween time, so this happened just before Halloween. They seem pretty popular at sporting events, too. They are. Why? I've never understood. They've gotten more popular. So in this case, there are unusual facts. You know, we have our picture of our product, our trademark, Rostenpasta, everything displayed on Amazon. You go to buy the banana before the injunction was issued, and you're shipped kangaroo's banana instead as the consumer after you've already made the purchase. So we had stuff like that happening before the injunction was issued, and Your Honor had just asked if that order was, and I did see in the docket where the order was entered as a final injunction. Well, the order was entered, but it doesn't prohibit them from doing anything. Well, it says our motion for preliminary injunction was granted. It's not an order. I mean, we can't ignore the final order rule, right? I mean, you drafted your order. Your proposed order said what it was supposed to say. You had all the details in there, as I recall. Correct. I think we both interpreted the court when he said it's granted and issued this opinion as, and requiring a bond. The opinion doesn't say anything either. The opinion doesn't say we're doing this, this, and this. It says we're granting. Yes. I mean, this, I hate to sound hyper-technical, but there is a doctrine called the final order rule, and it does go to our jurisdiction, and there's a distinction between opinions of this court. Opinions of this court are not orders, right? We enter a judgment after we write our opinion. The Supreme Court doesn't. They put a simple line on the end of their opinion that says it is so ordered. Their opinion is the judgment. Here, Judge Hillman's opinion granting the relief that you seek is not an order of court. It's a judge's opinion explaining why he's doing what he's doing. But then the order doesn't prevent them from doing anything. Although I do understand why counsel didn't go ahead. I think you would have had them hauled in front of Judge Hillman pretty quickly for contempt. But then maybe the proper order would have been entered at that time. I don't think he was blaming you. I understand, Your Honor. I completely understand. No, you submitted the form of order that would have laid out all the things that they can't do. He just didn't enter that order. Yes, Your Honor. Before my time is up, I just wanted to quickly address two other points raised by counsel. The first one, he says our CEO said it was designed like a banana. It mimics a banana. I would encourage the court to just look at his actual words because the actual words he said were, when questioned on the witness stand, is this based on a banana? He said, yes, it was based on a banana. The paraphrasing of his words does distort the meaning of what it was said. The meaning of what he said was that he did create a unique design, that there was nothing else like it out there at the time, and it's been a great success for the company, which has led to copying incidents like this. And the defendant actually had purchased the costume, thousands of them, before they had the falling out, and he decided to do this. Let me ask you a question. I know you two do IP stuff, and so I feel like this is fair. There's a passage in Star Athletic, and I'm wondering how you think it applies here. It says, of course, to qualify as pictorial, graphic, or sculptural work on its own, this feature cannot itself be a useful article or an article that's normally part of a useful article. Does that apply here? I mean, it seems that the banana is the entire – I guess if you assume that costumes are useful articles, it's the whole thing, right? No, it's whether it has elements which are separable, which means that you can take the lines and say there's no utility to these lines. There's not just one way to do these lines. An actual banana has more than just these two lines. You can take the tips. And can you create an article that's not useful, that looks like our banana, and has the same artistic design features that are distinguishable for others? So the company's been around for almost 35 years. If they have a 35-year celebration party and they want to create a piñata that looks like their most famous costume design, they could create the outline of the banana without the human inside it, but just a piñata that otherwise has the same ends, has the same layout, has the same cut and design, and everyone would immediately walk in the room and say, what a great piñata that looks like the Rostim pasta banana costume. And if the piñata looked more like one of the other ones from other companies in Exhibit A, it wouldn't be such a good match. And people would recognize that, too. They would recognize that the ends look different or the cut looks different. And if you created multiple piñatas, you could probably match which one went with which costume. And that really illustrates that there is separability. There is artistic, a creative spark. There's a difference between limited copyright protection and no copyright protection. And we concede in this case that we have limited copyright protection and that this is not high art that may end up in the Philadelphia Museum of Art. But what we don't concede is there's no creative spark, there's nothing original, and that consumers can be harmed and confused in the way that they've been in this case, and that nothing of value has been created by the company, which is protectable by intellectual property law whatsoever. I want to ask the same question I asked your adversary. How should we practically go about reviewing the eight features, unique features found by the district court? How do we do that? So I think Judge Hellman's 35-page decision is very thoughtful. Do we have to actually take pictures out and read the opinion and then take the pictures out and look at the features that he's talking about here? I think the opinion can stand on its own, but the pictures help the imagination. Imagine each different way that you can create a banana on the body. So when you look at that, it may seem obvious, but when you see it next to all the other ways that artists have conceived of this design, it just illustrates your imagination. Well, bananas can go to the left. Very subjective, so it could be subjective. So if I would see, what do I do if I see, well, Judge Hellman said that it was unique, the overall shape, design, and curvature, or the location of the cutouts. Is that something that I'll objectively be able to see, or is there going to be some subjectiveness to this? And if there is subjectiveness to this, what do we do as an appellate court? Two people can see things differently, I guess is my point. Right. Well, in this case, substantial similarity, and I believe copying, have been conceded. So the only thing is, is there originality? Because for copyright infringement, you only need a valid copyright in copying. Set aside copying, we're left with, was the Copyright Office, did they validly issue a copyright? Did they apply the law correctly in issuing it? And for there, we just need some creative spark. And when he pulled out each of these things and looked at Star Athletica, and said, okay, banana costumes and cheerleading uniforms are not of equal utility, but I see enough of a design here that's protected. I believe he was correct in doing that and identifying things that are separable and come together to create the design. Opposing counsel said, well, he erred in looking at the costume as a whole, but that's not actually found anywhere in the law. Under FICE, they actually look at the copyrighted work as a whole, and obviously that's part of substantial similarity. No, we haven't gone after all yellow bananas. No, we haven't gone after all bananas with two lines. But when you look at this nearly identical product and you look at the unusual facts of this case, then I think it's clear it's copyright infringement. Thank you, Counsel. Thank you, Your Honor. I'd like to summarize very quickly three points that I think I'd like to leave the court with. The first is that the elements that are relied on in Judge Hillman's decision below incorporate utilitarian aspects. They don't follow Star Athletica by analyzing the separate entity of the design from the costume. So right off the bat, the analysis is flawed. The second thing is what you'll note is missing from Judge Hillman's decision is there is no analysis at all, and it's never even addressed, any of the cases that talk about not being able to copy things as they appear in nature. There's a string of about five or six such cases. I think we cited four to the court below, and we added one or two into the appeal. Are those after Star Athletica, though? I don't remember off the top of my head, but if you look in the table of authorities, you'll be able to look at the dates. And the third thing is I'd like to just read a little excerpt that we've cited in the brief, but read the actual text from the transcript, because counsel talks about this has some artistic add-on from being a regular banana. So I just want to read a page of text from the transcript of the hearing. You have 42 seconds. Read fast. Question. In fact, I don't mean to be dramatic. Here's a banana that I brought into court. Mine isn't ripe. There's a little overripe. It's got some black spots, but it's the best I could do on short notice. It has a black tip on the bottom, correct? Yes. And a black tip on top when the stem part connects to the tree, correct? On that one, it's the top piece is green. It's still on there, correct? And it's yellow. It's curved, correct? Yes. Is your banana costume designed to look like a real banana in the type that I brought in, a ripe banana, a banana that's yellow? Does it have any special pattern or artistic design on the banana itself? No. Does the kangaroo banana also look like a real banana? Yes. And it has a black top on the top of it? Yes. And a black piece on the bottom? Yes. And it's curved and yellow like a real banana? Yes. Did you use a real banana as the image on which it was based? We looked at a banana because that's what a banana is based on. There's more in the transcript, but the transcript... What did you just read from, just for the record? I read from page 2. Of course, I closed the book. Off the top of my head, I can get you the site if you want to wait one second. It's right here. Sure. I'll get you the page. It's page 281 to 282 of the record. I want to thank the panel for hearing this today. I think it's a case of first impression in terms of extent in this circuit. Most of the law is out of the Ninth Circuit, and maybe they think there's a case out of the First and Fifth Circuits, but this is an opportunity to really set the law in this circuit. Thank you. Thank you, counsel. We'll take the case under advisement.